UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DONALD JENKINS                              CIVIL ACTION

VERSUS                                       NO: 23-6473

SCF MARINE, INC. ET AL                       SECTION: "A" (1)

<u>ORDER AND REASONS</u>

Before the Court is a **Motion for Partial Summary Judgment (R. Doc. 73)** and a **Motion for Summary Judgment Based on Lack of Proof of Causation (R. Doc. 80)**, filed by Defendant, SCF Waxler Marine LLC ("SCF Waxler").[1] Plaintiff Donald Jenkins opposes the motions. The motions are before the Court on the briefs without oral argument. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motions for summary judgment.

### I.   Background

In March 2023, Jenkins was sleeping in his bunk room aboard the M/V DEANA ANN ("DEANA ANN") when he was allegedly exposed to toxic fumes from cleaning operations conducted by crewmembers. Although the identity and exact ratio of the cleaning products used is in dispute, Jenkins purports that the crewmembers used a mixture of "chlorine (bleach) and spic and span and/or degreaser."[2]  Jenkins claims that he inhaled the toxic gases from this mixture and was awoken by choking, the sense of suffocating, and the inability to breathe.[3]

---

[1] The Court previously denied SCF Waxler's *Daubert* Motion to Exclude Opinions of Dr. Raymond Singer.

[2] R. Doc. 75, Memo. in Opposition to Def.'s Mot. for Summ. Judgm., at 3.

[3] *Id.*

From this incident, Jenkins alleges that he has endured significant health issues that have impacted almost every function of his body and his quality of life.[4] Jenkins originally asserted that he suffered from "severe and irreversible pulmonary and neurologic damage which, in turn, have caused severe and permanent compromise of Plaintiff's pulmonary function, cardiovascular function, blurred vision, hearing loss, general weakness, shaking, severe headaches, severe cognitive impairment, and severely decreased mobility, anxiety, depression, and damage to his teeth."[5] However, Jenkins has brought to the Court's attention that he has amended his previous discovery responses so that the only remaining conditions at issue, for purposes of the pending motions for summary judgment, are pulmonological and neurological.[6]

Before the incident, Jenkins had an extensive history of diagnosed medical issues. With respect to his pulmonary condition, Jenkins suffered from Chronic Obstructive Pulmonary Disease.[7] His medical records indicate that he had opacities and nodules on his lungs and was being treated for these conditions while being monitored for lung cancer prior to this alleged exposure.[8] Jenkins does not dispute his prior medical history; instead, he maintains that his pulmonological issues were worsened or aggravated by his inhalation of the chemical toxins.[9]

---

[4] *See* R. Doc. 75-7, Forensic Neuropsychological and Neurotoxicological Eval., at 9 & 26-29.
[5] R. Doc. 18 ¶ 9.
[6] R. Doc. 75 at 1.
[7] R. Doc. 73-3, Depo. of Donald Jenkins, at 198
[8] R. Doc. 73-8, Northlake Pulmonology; R. Doc. 73-14, MD Anderson.
[9] R. Doc. 75 at 6.

Jenkins was also diagnosed with toxic encephalopathy and neurotoxicity by Dr. Goodwin, his treating neurologist.[10] Dr. Goodwin referred Jenkins to Dr. Singer, a neuropsychologist and neurotoxicologist, for further evaluation. Dr. Singer also provided a differential diagnosis of toxic encephalopathy secondary to the chemical inhalation incident.[11] Jenkins has since retained Dr. Singer as an expert in neuropsychology and neurotoxicology.[12]

On April 28, 2026, Defendants produced the DEANA ANN for a vessel inspection to be conducted by Jenkins's industrial hygiene expert, Nancy McCellan.[13] Her report was due on May 29, 2026.[14] Both the vessel inspection and expert report were produced *after* all three motions were filed by SCF Waxler. Given this timeline, Jenkins argues that the pending motions are premature because not only is discovery ongoing, but Dr. Singer has not had the opportunity to update his report to incorporate the analysis and conclusions of McCellan.[15]

SCF Waxler argues that Jenkins has failed to present reliable expert testimony that his injuries were caused by the exposure to cleaning chemicals aboard the DEANA ANN.[16] The argument relies on SCF Waxler's contention that "Dr. Raymond Singer does not meet the standards for admissibility and reliability under Federal Rule of Evidence 702, the Supreme Court's guidance in *Daubert v. Merrell Dow Pharmaceuticals* [509 U.S. 579 (1993)], or this Court's decisions in the DEEPWATER

---

[10] R. Doc. 86, Opp. to Mot. to Exclude, at 15.
[11] *Id.* at 1.
[12] *Id.* at 4.
[13] *Id.* at 10.
[14] *Id.*
[15] *Id.* at 5.
[16] R. Doc. 80-1, Memo. in Support of Mot. for Summary Judgm., at 1.

HORIZON cases."[17] SCF Waxler asserts that Jenkins has failed to produce any evidence supporting general or specific causation. Further, SCF Waxler argues that Jenkins has presented no reliable expert opinion that the alleged chemical exposure caused or worsened his pulmonary condition.[18] Finally, although McClellan's report was produced after SCF Waxler filed its motion for summary judgment, the defendant raised a new argument in its reply, stating that "the expert report authored by Nancy McClellan contains textbook indicators of an unscientific opinion – 'unfounded conclusions' and 'inaccurate data' – but it fails to offer a reliable opinion supporting causation."[19]

## II.    Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause,"

---

[17] *Id.* The Court previously denied SCF Waxler's motion to exclude Dr. Singer's testimony, and therefore it finds this argument unpersuasive.

[18] R. Doc. 76, SCF Waxler Marine LLC's Reply Memo. to Mot. for Partial Summary Judgm., at 1.

[19] R. Doc. 91, Reply Memo. in Support of Mot. for Summary Judgm., at 1.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing FED. R. CIV. P. 56(E); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

The basic principles of summary judgment assume at least some discovery has occurred. *Lewis v. Eye Care Surgery Ctr., Inc.*, No: 21-475, 2023 WL 6966067, at *1 (M.D. La. Oct. 20, 2023) (Dick, J.). When a party moves for summary judgment and the nonmoving party is unable to produce admissible evidence to oppose the motion, Federal Rule of Civil Procedure 56(d) requires that summary judgment be postponed if the nonmovant has not had the opportunity to discover information that is essential to his opposition. *Id.* Rule 56(d) allows the non-movant to request additional time to conduct discovery and to request a court to deny summary judgment. *Id.*

5

III.   Discussion

The plaintiff's burden with respect to causation in a toxic tort case involves proof of both general causation and specific causation. *See Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ("there is a two-step process in examining the admissibility of causation evidence in toxic tort cases"). General causation is whether a substance is capable of causing a particular injury or condition in the general population. *Id.* at 351. Specific causation is whether a substance caused a particular individual's injury, i.e., the plaintiff's injury. *Id.* (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)). If the plaintiff's case fails at the first step of producing admissible evidence as to general causation, then the issue of specific causation is rendered moot. *See id.* (citing *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1329 (10th Cir. 2004)).

Although Jenkins alleged a plethora of medical conditions in his complaint, he has since amended his discovery responses so that the only conditions at issue are pulmonary and neurological. He asserts that the incident exacerbated his pre-existing pulmonary conditions, and that it was the cause of the neurological symptoms he has been experiencing. Accordingly, the Court will address each condition in turn.

a. Pulmonological Condition

As to the pulmonological condition, Jenkins has not met his burden of proof for either general or specific causation. He has not provided any evidence that the alleged mixture of cleaning chemicals used can generally exacerbate the pulmonary

6

conditions he presents. Nor has Jenkins provided evidence that the mixture exacerbated his individual injury. Instead, Jenkins merely provides a few pages of medical records from his treating emergency department physician, Dr. Tausend, and his treating pulmonologist, Dr. Ashraf.[20] These records show that Jenkins complained to Dr. Tausend of worsening shortness of breath following the alleged chemical exposure, and that Dr. Ashraf's examination indicated "pulmonary emphysema" and "chemical asthma."[21]

Although Jenkins also includes Dr. Singer's report which cites to studies that "have suggested long-term pulmonary abnormalities following acute chlorine exposure …" none of these studies report the types of acute, prolonged pulmonary issues that Jenkins is experiencing. Further, Dr. Singer is a neurotoxicologist and neuropsychologist, not a pulmonologist. Neither he nor Jenkins provided any information as to what qualifies Dr. Singer to give his expert opinion on the relationship between toxic chemical exposure and pulmonary conditions. Accordingly, Jenkins has provided an inadequate amount of evidence to show causation, especially considering his extensive history of pulmonary issues.

Jenkins also argues that discovery is ongoing, and, through no fault of his counsel, the deposition of Dr. Ashraf has not been conducted yet.[22] The Court finds this argument unavailing. There is no indication that Dr. Ashraf's deposition by Defendants would produce the evidence needed to prove specific and general

---

[20] R. Doc. 75-8, ED Arrival Information; R. Doc. 75-9, ED Notes by Provider; R. Doc. 75-10, Telemedicine in Houston Methodist Lung Center.
[21] R. Doc. 75-8; R. Doc. 75-10.
[22] R. Doc. 75 at 5-6.

causation. Even so, the burden is on the plaintiff to make this showing. The case has been pending since 2023, and still Jenkins has not proffered any evidence or expert testimony showing the necessary scientific knowledge required to prove causation. Accordingly, the Court grants summary judgment as to Jenkins's pulmonary condition, and as to his cardiovascular and dental conditions because Jenkins concedes that these injuries are no longer at issue.

### b. Neurological Condition

Following the incident aboard the DEANA ANN, Jenkins has experienced severe neurological issues and mental decline.[23] For example, Jenkins claims that he has no memory of how he returned home from the vessel, and that he had a feeling of unconsciousness and saw black figures and shadows walking while awake.[24] Jenkins still suffers from dizziness, confusion, memory loss, headaches, and mood instability.[25] He now has to use a walker, and can no longer drive or work.[26] Multiple doctors have observed Jenkins's general confusion and mood instability (i.e., becoming very emotional and crying when discussing the incident and his current medical problems). One former crewmember corroborated the fact that Jenkins "was not himself […] he seemed off and was slumped down" immediately following the incident.[27] To prove causation, Jenkins offers the expert opinion of neuropsychologist and neurotoxicologist, Dr. Singer, and industrial hygienist, Nancy McCellan.

---

[23] *See generally* R. Doc. 86-1, Forensic Neuropsychological and Neurotoxicological Evaluation of Donald Jenkins.
[24] *Id.* at 8.
[25] *Id.* at 9.
[26] *Id.* at 26.
[27] R. Doc. 86-3, Sworn Declaration of Darryl Rodgers.

SCF Waxler again argues that Jenkins has failed to present reliable expert testimony that his claimed injuries were caused by exposure to cleaning chemicals aboard the DEANA ANN. Specifically, Defendants argue that "Dr. Singer does not identify or explain (1) the exposure level at which chlorine is harmful, (2) the specific chemicals to which Mr. Jenkins was exposed, (3) the quantity of Mr. Jenkin's exposure, or (4) the duration of the exposure."[28] Although SCF Waxler did not file a motion in limine to exclude the expert opinion of McCellan, it argues throughout its motion for summary judgment that her opinion is equally unreliable and inadmissible.

First, the Court may admit specific causation evidence only after the plaintiff has produced admissible evidence on general causation. *See Knight*, 482 F.3d at 351. Here, the Court finds that Jenkins has shown that the toxic chemicals he claims to have been exposed to can generally cause the types of neurological symptoms that Jenkins is experiencing. In his expert report, Dr. Singer references a study that found "Chlorine-exposed subjects had impaired balance (with eyes open and eyes closed), delayed simple and choice reaction times, impaired color discrimination, impaired visual field performance, decreased hearing, and decreased grip strength." And "adverse mood states scores were elevated as were the frequencies of 28 of 35 common symptoms."[29] These symptoms manifested after chemical exposure anywhere from "a breath or two to several hours."[30] Another study that Dr. Singer references also found

---

[28] R. Doc. 79-1, SCF Waxler's Memo. in Support of Mot. to Exclude, at 1.
[29] R. Doc. 86-1 at 10-11.
[30] *Id.*

that "[c]hlorine exposed women performed statistically significantly below unexposed women for simple and choice reaction times, balance with eyes open and eyes closed, color discrimination, grip strength, Culture Fair, digit symbol substitution, vocabulary, trail making B and pegboard. Profile of mood states scores and frequency symptoms were elevated. […] Chlorine bleach exposure was associated with impaired neurobehavioral functions and elevated POMS scores and symptom frequencies."[31] Along with the rest of Dr. Singer's 108-page expert report, the Court finds that Jenkins had met his burden of proof as to general causation.

To show specific causation in a toxic torts case, a plaintiff must present "scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities." *Schindler v. Dravo Basic Materials Company, Inc.*, No. 17-13013, 2019 WL 446567, *5 (E.D. La. 2019) (Vance, J.) (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999)). The law does not require a plaintiff to show the precise level of his exposure to the toxic substance to hold a defendant liable. *Id.* Likewise, for an expert's specific causation opinion to be reliable, the opinion need not include a calculation of the precise level of the plaintiff's exposure. *Id.* But Rule 702(b) requires an expert to base his opinion on sufficient information about the circumstances or level of the plaintiff's exposure attributable to the defendant's negligence that goes beyond a general statement that the plaintiff was exposed to some amount of a toxic substance. *Id.*

---

[31] *Id.*

10

The Court finds that Jenkins has raised material issues of fact regarding specific causation. He has submitted declarations by Brent Babin and Darryl Rodgers, mates aboard the DEANNA ANN on the date of the incident, that corroborate 1) the use of bleach and chemical agents being mixed and used outside of Jenkins's bunk; 2) that Jenkins had discussed his sensitivity to bleach with the captains; and 3) that Jenkins was not himself/out of it immediately following the incident. Dr. Singer and McCellan used these declarations, along with the depositions of other crew members, Jenkins's medical records, CDC guidelines, and scientific studies to come to their conclusions that the exposure to the toxic mixture of cleaning chemicals caused Jenkins's neurological issues. McCellan also had the benefit of the vessel inspection to confirm that "no outside air was supplied by the bunk room ventilation system, the first and second floors and the engine room are under negative pressure, and a common return plenum and observable penetrations or gaps were identified and photographed."[32]

SCF Waxler essentially asks the Court to find the testimony of Jenkins's shipmates, along with the expert opinions of Dr. Singer and Nancy McCellan, not credible.[33] It would be inappropriate for the Court to make such findings at the summary judgment stage.

---

[32] R. Doc. 90-13, Industrial Hygiene Expert Opinion Report, at 7.

[33] The Court is not persuaded by Defendants' objections to the affidavits of Darryl Rodgers and Phillip Rainer because they are "improperly notarized and thus defective and inadmissible."[33] Under Rule 56, a party can support his factual position by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or *declarations*, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" (emphasis added). At the very least, the statements made by Darryl Rodgers and Phillip Rainer are sworn declarations made by witnesses with personal knowledge that set out facts that would be admissible in evidence and show that the affiant or declarant is competent

11

Accordingly;

**IT IS ORDERED** that the **Motion for Partial Summary Judgment (R. Doc. 73)** is **GRANTED** as far as it seeks to dismiss Plaintiff's claims for compromised cardiological function, pulmonary function, and dental injuries. These claims are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that the **Motion for Summary Judgment Based on Lack of Proof of Causation (R. Doc. 80)** is **DENIED** as to Plaintiff's claims for his neurological condition.

July 16, 2026

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

to testify on the matters stated—this meets the requisite criteria for admissibility for summary judgment.